UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No.: 3:24-cv-00979

| | |
|---|---|
| TAMIKA DUPREE, | ) |
| Plaintiff, | ) |
| v. | ) AMENDED COMPLAINT and DEMAND |
|  | ) FOR JURY TRIAL |
| CHARLOTTE MECHANICAL, LLC, | ) |
| Defendant. | ) |

Plaintiff, Tamika Dupree ("Plaintiff" or "Dupree"), by and through counsel, brings this action for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. § 95-25 *et seq.*, the North Carolina Retaliatory Employment Discrimination Act ("REDA"), N.C. Gen. Stat. § 95-241 *et seq.*, and wrongful discharge in violation of public policy against Defendant Charlotte Mechanical, LLC ("Defendant").

## NATURE OF PLAINTIFF'S CLAIMS

1. Plaintiff brings her FLSA claim pursuant to 29 U.S.C. § 216(b) and seeks to recover unpaid overtime wages and statutory penalties within the three-year period preceding the filing of this Complaint.

2. Plaintiff's FLSA claims result from Defendant's policy and practice of failing to timely pay Plaintiff all statutory overtime wages by miscalculating Plaintiff's overtime rate in weeks in which Plaintiff received a "FEE" payment for completing work outside of her regularly scheduled work shift.

3. Plaintiff's NCWHA claim arises from Defendant's failure to pay all earned and promised non-overtime wages, including commissions, on her regularly scheduled pay day and the regularly scheduled pay day following her termination from employment.

4. Plaintiff's REDA claim against Defendant results from Defendant's willful termination of Plaintiff's employment in retaliation for Plaintiff's good faith initiation of an inquiry regarding unpaid wages under the NCWHA.

5. Plaintiff's wrongful discharge in violation of public policy claim results from Defendant's willful termination in violation of the public policy of North Carolina, specifically outlined in N.C. Gen. Stat. § 95-240 *et seq.*

## THE PARTIES

6. Plaintiff is an adult individual who is a resident of Charlotte, North Carolina.

7. Defendant is a domestic corporation registered and in good standing in the State of North Carolina.

## JURISDICTION AND VENUE

8. This Court has original federal question jurisdiction under 28 U.S.C. § 1331 for the claims brought under the FLSA, 29 U.S.C. § 201 *et seq.*

9. Plaintiff's NCWHA and REDA claims are based on the law of the State of North Carolina. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the pendant state statutory claims because they arise out of the same nucleus of operative facts giving rise to Plaintiff's FLSA claims.

10. This Court has personal jurisdiction because the Defendant conducts substantial business in Mecklenburg County, North Carolina, which is located within this judicial district.

11. Venue is proper in this judicial district because Defendant has substantial business contacts in this district and because the unlawful acts alleged herein occurred in Mecklenburg County, North Carolina, which is located within this judicial district.

## COVERAGE ALLEGATIONS

12. At all relevant times, Defendant has been an "enterprise" within the meaning of Section 3(r) of the FLSA 29 U.S.C. §203(r).

13. At all relevant times, Defendant has been an "enterprise engaged in commerce or in the production of good for commerce" within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that the enterprise has had employees engage in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that the enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000.

14. At all relevant times, Defendant was an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

15. At all relevant times, Plaintiff was an "employee" within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

16. At all relevant times, Plaintiff was an individual employee who was engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. § 207.

17. At all relevant times, Defendant has been an employer within the meaning of Section 95-25.2(5) of the NCWHA, N.C. Gen. Stat. § 95-25.2(5).

18. At all relevant times, Plaintiff was an employee within the meaning of Section 95-25.2(4) of the NCWHA, N.C. Gen. Stat. § 95-25.2(4).

19. At all relevant times, Defendant has been a "person" within the meaning of Section 95-240, N.C. Gen. Stat. § 95-240(1).

20. At all relevant times, Defendant has been an "employer" with the meaning of Section 95-240, N.C. Gen. Stat. § 95-240.

21. Plaintiff satisfied her obligation to exhaust her administrative remedies by timely filing a complaint against Defendant with the North Carolina Department of Labor ("NCDOL") (File No.: 209671) alleging retaliation on or about May 8, 2024. The NCDOL issued a 90-day Right-to-Sue Letter on September 19, 2024, and Plaintiff timely brings this action within ninety (90) days of her receipt thereof.

## PLAINTIFF'S FACTUAL ALLEGATIONS

22. Defendant is an enterprise engaged in construction and mechanical services.

23. Dupree began her employment with Defendant on or about February 28, 2022, and held the New Construction Coordinator role.

### Plaintiff's FLSA allegations

24. At all relevant times, Defendant employed Dupree during the three-year period preceding the filing of this Complaint.

25. At all relevant times, Dupree was an hourly, nonexempt employee within the meaning of the FLSA and Dupree was eligible for overtime compensation for all work performed over forty (40) hours in a workweek.

26. From February 28, 2022, until February 28, 2023, Defendant paid Dupree $25.50 per hour. On or about February 28, 2023, Defendant increased Dupree's hourly rate to $27.00 per hour.

27. Plaintiff regularly worked more than 40 hours in a workweek during her employment and Defendant compensated Plaintiff for overtime hours worked. However, Defendant failed to calculate Plaintiff's overtime rate in compliance with the FLSA's requirement to include all remuneration earned during the workweek when calculating Dupree's regular rate.

28. Beginning in or about December 2022, Defendant paid Dupree a commission of $12 per inspection she completed outside of her normal working hours (7:30 a.m. to 5:00 p.m.). The commission is designated on Dupree's paystubs as a "FEE" payment.

29. Defendant violated the FLSA by failing to include Dupree's "FEE" payments in her regular rate when calculating her overtime premium rate in workweeks where Defendant paid Dupree such "FEEs."

30. For example, during the pay period of October 1, 2023, through October 14, 2023, Dupree worked 85.05 hours. Defendant paid Dupree $27.00 for 80 hours and $40.50 for 5.05 hours of overtime for a total of $2,364.53. However, Defendant also provided Dupree with a "FEE" payment of $1,068.00. Defendant failed to include the "FEE" payment when calculating Dupree's regular rate.

31. Defendant failed to include Dupree's "FEE" payment in her regular rate calculation in each pay period from December 2022 until her termination in November 2023.

**Plaintiff's NCWHA, REDA, and wrongful discharge in violation of public policy allegations**

32. On or about November 6, 2023, Dupree noticed that Defendant did not pay her correctly on her previous paycheck (for the pay period ending November 3, 2023) because it omitted several earned "FEE" payments for completing inspections outside her normal working hours.

33. Dupree complained to Sharon Shipp ("Shipp"), Defendant's Human Resources representative, about not being paid correctly because she did not receive compensation for all of the inspections she completed outside of her normal working hours.

34. Shipp told Dupree that Dan Dyszelski ("Dyszelski"), Defendant's Chief Financial Officer, made changes to Dupree's paycheck because it appeared to him that Dupree was paid "too much." Dupree told Shipp that no one told her anything about the changes in her wages.

35. However, in response to Dupree's complaint, Shipp initiated an investigation. Shipp subsequently informed Dupree that Defendant "made some changes" regarding employee's compensation and that Dupree needed to speak with her direct manager, Daniel Dumont ("Dumont"), regarding her compensation.

36. Dupree then informed Dumont that she did not receive compensation for all of the inspections she completed outside of her normal working hours. Dumont told Dupree that he needed to speak with Shipp about what Dupree should have been paid.

37. On or about November 10, 2023, Dumont told Dupree that there were "changes made" and that Defendant would not compensate Dupree for "inspections that came in before 4:30 [p.m.]" Dupree told Dumont that she did not receive notice of the changes in her compensation and that she expected to be compensated for the inspections that were completed outside of her working hours.

38. Defendant violated the NCWHA by failing to provide written notice of any change in Dupree's compensation at least one pay period before reducing her compensation. *See* N.C. Gen. Stat. 95-25.13.

39. Defendant additionally violated the NCWHA by failing to pay Dupree all promised and earned non-overtime wages on her regularly scheduled payday.

40. On or about November 14, 2023, Dupree met with Dumont and Kevin White ("White"), Defendant's Operations Manager. White asked Dupree what her issues were with her compensation. Dupree explained that she did not get paid for inspections that she completed outside her normal work shift and that Defendant did not give her notice of any change in her compensation before making the change.

41. White then accused Dupree of failing to complete inspections until after her regularly scheduled work shift so that she could receive extra commissions that she otherwise would not be entitled to receive. Dupree asked White for examples of all the days in which she allegedly failed to complete inspections during her regularly scheduled work shift. White could not provide any examples.

42. Instead, White told Dupree she had "two options: either drop it or today can be your last day." Dupree told White she would drop her complaints but that Defendant could find someone else to complete the inspections. White told Dupree that Defendant "would cut her a check." Dupree asked White if that meant Defendant was terminating her employment and White responded, "that's what it looks like."

43. On November 14, 2023, Defendant willfully terminated Dupree's employment in violation of REDA because she initiated an inquiry and Defendant conducted an investigation regarding Dupree's allegations into Defendant's violations of NCWHA.

### PLAINTIFF'S FIRST CAUSE OF ACTION
**(Violation of the FLSA – Unpaid Overtime)**

44. Plaintiff realleges and incorporates by this reference all the paragraphs above in this Complaint as though fully set forth herein.

45. Defendant violated the FLSA by failing to pay all overtime wages earned by Plaintiff.

46. Defendant violated the FLSA, as interpreted by 29 C.F.R. § 778.109, by failing to include all earned "FEE" payments when calculating Plaintiff's overtime premium rate in workweeks where Defendant paid Plaintiff such "FEEs."

47. Defendant's violations of the FLSA were willful.

## PLAINTIFF'S SECOND CAUSE OF ACTION
### (Violation of NCWHA – Failure to Pay Earned Wages)

48. Plaintiff realleges and incorporates by this reference all the paragraphs above in this Complaint as though fully set forth herein.

49. Defendant violated N.C. Gen Stat. §§ 95-25.6 and 95-25.7 by failing to pay all non-overtime wages when due on regularly scheduled paydays and the regularly scheduled payday following the end of Plaintiff's employment.

50. Defendant violated N.C. Gen. Stat. § 95-25.13 by failing to provide written notice of changes to Plaintiff's compensation at least one pay period before the changes took effect.

51. Defendant's violation of the NCWHA was willful.

## PLAINTIFF'S THIRD CAUSE OF ACTION
### (Violation of REDA – Retaliation)

52. Plaintiff realleges and incorporates by this reference all the paragraphs above in this Complaint as though fully set forth herein.

53. Filing a claim or complaint, initiating any inquiry, investigation, inspection, proceeding, or other action, or testifying or providing information to any person with respect to the General Statutes is a protected activity under N.C. Gen. Stat. § 95-243.

54. North Carolina law prohibits discrimination or retaliation against an employee for exercising rights protected under the North Carolina General Statutes. N. C. Gen. Stat. § 95-

241(a). This includes making any discrimination or retaliation against an employee for reporting a violation of the NCWHA, N.C. Gen. Stat. § 95-25.1 *et seq.*, unlawful.

55. By complaining to Defendant's human resources representative, her direct manager, and Defendant's Operations Manager, Plaintiff made clear her intent to initiate an investigation into Defendant's violative practices and Defendant in turn conducted an investigation into Plaintiff's complaints regarding Defendant's violative practices under the NCWHA, Plaintiff thereby engaged in protected activity. N.C. Gen. Stat. § 95-241(a).

56. Defendant terminated Plaintiff's employment because she engaged in protected activity in violation of REDA.

57. Defendant's violation of REDA was willful.

58. As a proximate result of Defendant's conduct, Plaintiff has suffered, and continues to suffer damages, including but not limited to lost wages and benefits and other economic losses as well as treble damages pursuant to N.C. Gen. Stat. § 95-243.

**PLAINTIFF'S FOURTH CAUSE OF ACTION**
**(Wrongful discharge in violation of public policy)**

59. Plaintiff realleges and incorporates by this reference all the paragraphs above in this Complaint as though fully set forth herein.

60. It is the public policy of the State of North Carolina, as expressed in, *inter alia*, N.C. Gen. Stat. § 95-240, that employees be free from harassment, discrimination, and retaliatory treatment in their employment.

61. Plaintiff participated in legally protected activity by pursuing lawful employment with the expectation of having her statutory rights respected and preserved by Defendant.

62. The termination of Plaintiff's employment, resulting from complaining about wage and hour violations, was wrongful as against the public policy of the State of North Carolina.

63. Such termination proximately caused Plaintiff to suffer non-economic losses, entitling Plaintiff to compensatory damages under North Carolina law and interest pursuant to N.C. Gen. Stat. § 24-5(b).

64. Defendant's acts constituted willful, wanton, and malicious conduct, entitling Plaintiff to punitive damages pursuant to Chapter 1D of the North Carolina General Statutes.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands the following relief:

a) An Order pursuant to Section 216(b) of the FLSA finding Defendant liable for unpaid overtime wages due to Plaintiff and for liquidated damages equal in amount to the unpaid overtime wages found due to Plaintiff;

b) An Order pursuant to the NCWHA finding Defendant liable for unpaid regular wages due to Plaintiff and for liquidated damages equal in amount to the unpaid compensation found due to Plaintiff;

c) An Order pursuant to REDA finding Defendant liable for all damages available under N.C. Gen. Stat. § 95-243, including but not limited to reinstatement, back pay, front pay, and treble damages;

d) An Order pursuant to N.C. Gen. Stat. § 24-5(b) and Chapter 1D awarding Plaintiff compensatory and punitive damages;

e) An Order requiring Defendant to pay to Plaintiff all attorneys' fees, litigation expenses, and costs incurred as a result of bringing this action;

f) An Order requiring Defendant to pay to Plaintiff pre- and post-judgment interest on all sums recoverable; and

g) An Order granting such other legal and/or equitable relief as may be necessary and appropriate.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury for all issues of fact.

Dated: March 4, 2025

Respectfully submitted,

s/ Corey M. Stanton
Philip J. Gibbons, Jr., NCSB #50276
Corey M. Stanton, NCSB #56255
**GIBBONS LAW GROUP, PLLC**
14045 Ballantyne Corporate Place, Suite 325
Charlotte, North Carolina 28277
Telephone:(704) 612-0038
E-Mail: phil@gibbonslg.com
corey@gibbonslg.com

*Attorneys for Plaintiff*

# CERTIFICATE OF SERVICE

This hereby certifies that on this date, undersigned counsel filed the foregoing document with the Clerk of Court using the Court's ECF/CM system, which will serve a copy of this filing on all attorneys of record.

s/ Corey M. Stanton
Corey M. Stanton, NCSB #56255
*Attorney for Plaintiff(s)*
